**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW L. JACKSON, ) | |
| ) | |
| Plaintiff, ) | No. 08CV3339 |
| ) | |
| vs. ) | JUDGE GOTTSCHALL |
| ) | |
| JERNBERG INDUSTRIES, INC., ) | MAGISTRATE JUDGE BROWN |
| ) | |
| Defendant. ) | |

**JERNBERG INDUSTRIES, INC.'S ANSWER**
**AND AFFIRMATIVE AND ADDITIONAL DEFENSES**

Defendant Jernberg Industries, Inc. ("Jernberg"), for its Answer to the Complaint of Plaintiff Matthew L. Jackson ("Complaint"), states as follows:

**NATURE OF ACTION**

"1.    This is an action for damages and injunctive relief caused by the Defendant's interference with Plaintiff's exercise of rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 ("FMLA")."

**ANSWER:**    Jernberg admits that Plaintiff brings this action for damages and injunctive relief under the FMLA. Jernberg denies the remaining allegations contained in Paragraph 1 of the Complaint, and denies that Plaintiff is entitled to any relief.

**JURISDICTION AND VENUE**

"2.    This court has jurisdiction of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 2617."

**ANSWER:**    Jernberg admits the allegations of Paragraph 2 of the Complaint.

"3.    The unlawful employment practices described herein were committed within the State of Illinois, in Defendant's facility at 328 West 40th Place in Chicago, Illinois. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b)."

**ANSWER:** Jernberg admits that the Complaint describes alleged employment practices that occurred in the State of Illinois, in Jernberg's facility at 328 West 40th Place in Chicago, Illinois, and that venue in the Northern District of Illinois is proper. Jernberg denies the remaining allegations contained in Paragraph 3 of the Complaint.

## PARTIES

"4.     Plaintiff, Matthew L. Jackson, is a resident of Cook County, Illinois. He was employed by Jernberg from approximately September 30, 2002, until his termination on June 28, 2006. Plaintiff was at all relevant times an "employee" of Defendant within the meaning of 29 U.S.C. § 2611(2)(A), including at the time that he was terminated for exercising his rights under the FMLA. Jackson is an "eligible employee" under 29 U.S.C. § 2611(2)(B)(ii), because Jernberg employs more than 50 employees within 75 miles of his worksite."

**ANSWER:** Jernberg admits that Plaintiff was employed from September 30, 2002 until his termination in June 2006, that it employs more than 50 employees within 75 miles of the worksite where Plaintiff worked, and that Plaintiff was an "employee" and an "eligible employee" under the FMLA. Jernberg lacks sufficient information or knowledge to form a belief as to the truth of the claim that Plaintiff is a resident of Cook County, Illinois and, accordingly, denies that allegation. Jernberg also denies the remaining allegations contained in Paragraph 4 of the Complaint. Jernberg states affirmatively that Plaintiff was discharged on June 29, 2006.

"5.     Defendant is a Delaware corporation doing business in the state of Illinois, is capable of being sued, is an employer under 42 U.S.C. § 2000(e)(b), and is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000(e)(h). Defendant was the "employer" of Plaintiff within the meaning of 29 U.S.C. § 2611(4)(A) at all times relevant to this action."

**ANSWER:** Jernberg admits the allegations in Paragraph 5 of the Complaint.

## FACTUAL ALLEGATIONS

"6.     Plaintiff began working for Defendant, a Company that produces forged and machined components for the automotive industry, on or about September 30, 2002."

**ANSWER:** Jernberg admits the allegations in Paragraph 6 of the Complaint.

"7.     As a worker in the Final Processing division of the Company, Plaintiff performed manual labor that was physically demanding, required rapid, physically strenuous, and repetitive motions, and included working on a machine that vibrated vigorously."

**ANSWER:**     Jernberg admits that Plaintiff worked in the Final Processing division of the Company and that at times he performed manual labor that was physically demanding, required rapid, physically strenuous, and repetitive motions, and included working on a machine that vibrated vigorously. Jernberg denies the remaining allegations of Paragraph 7 of the Complaint.

"8.     A few months prior to February 7, 2004, as a result of the physical demands of his job, Plaintiff began experiencing pain in his left wrist, which gradually and progressively got worse. On that day, Plaintiff experienced significant pain and swelling in his left wrist."

**ANSWER:**     Jernberg lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and accordingly, denies those allegations.

"9.     The next day, on or about February 8, 2004, Plaintiff went to the emergency room of the University of Chicago Hospital, where he ultimately was diagnosed as having an overuse injury resulting from his job duties and referred to surgery."

**ANSWER:**     Jernberg admits that it received documentation showing that Plaintiff went to the emergency room of the University of Chicago Hospitals on February 8, 2004, that he was diagnosed with an overuse injury, and that Plaintiff was ultimately referred to surgery. Jernberg states affirmatively that Plaintiff was referred to surgery on February 16, 2004. Jernberg lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint, and accordingly, denies those allegations.

"10.    Later in the year 2004, Plaintiff took approved continuous leave under the FMLA to have the recommended surgery performed on his left wrist, and to recover from the procedure."

**ANSWER:**     Jernberg admits the allegations in Paragraph 10 of the Complaint.

"11. Despite the surgery, Plaintiff's injuries did not fully heal, and he continued to experience intermittent severe pain in his left wrist and arm."

**ANSWER:** Jernberg admits that it received documentation stating the allegations contained in Paragraph 11 of the Complaint, but Jernberg lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and, accordingly, denies those allegations.

"12. Based upon his injuries, Plaintiff filed a claim for workers' compensation, which the Company denied and vigorously contested. In June, 2005, the Workers' Compensation Arbitrator found, based upon a full hearing, that the Company's refusal to pay benefits was "objectively unreasonable," that the Company "attempted a cover up," and introduced material "intended to …deceive the trier of fact." Thus, the Arbitrator ruled in favor of the Plaintiff and assessed penalties against the Company as a result of its conduct."

**ANSWER:** Jernberg admits that Plaintiff filed a claim for workers' compensation based on his injuries, that it contested Plaintiff's claim, and that in June 2005 the Workers' Compensation Arbitrator ruled in favor of the Plaintiff. Jernberg is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 of the Complaint, and accordingly, denies those allegations.

"13. On August 28, 2005, Plaintiff requested intermittent FMLA leave because of recurring pain in his left hand, wrist, and arm, which prevented him from doing his job."

**ANSWER:** Jernberg admits that on August 28, 2005, Plaintiff requested intermittent leave under the FMLA and that he provided a medical certification, which stated that the reason for the requested leave was surgery on his left wrist scheduled for November 7, 2005. Jernberg denies any remaining allegations contained in Paragraph 13 of the Complaint.

"14. At the Company's request, Plaintiff's surgeon certified Plaintiff's request for intermittent FMLA leave, and further specified that Plaintiff had 'to be off work intermittently due to pain and wrist weakness.' "

**ANSWER:** Jernberg admits the allegations in Paragraph 14 of the Complaint.

"15.    After receiving the Plaintiff's request form and the Plaintiff's surgeon's certification, Defendant approved Plaintiff for intermittent FMLA leave for a one-year period, from August 29, 2005 until August 29, 2006."

**ANSWER:**    Jernberg admits the allegations in Paragraph 15 of the Complaint.

"16.    At all times relevant to this litigation, Defendant kept Plaintiff's medical certification on file at the Company."

**ANSWER:**    Jernberg admits the allegations in Paragraph 16 of the Complaint.

"17.    For each occasion in which Plaintiff had to take time off pursuant to his approved intermittent FMLA leave, Defendant required Plaintiff to contact his physician and obtain a separate, written doctors' note explaining Plaintiff's condition and excusing him from work."

**ANSWER:**    Jernberg denies the allegations in Paragraph 17 of the Complaint.

"18.    Defendant's requirement that Plaintiff obtain a doctors' note each time he needed to take time off of work pursuant to his approved intermittent FMLA leave effectively required Plaintiff to obtain constant re-certification of his medical condition in violation of the FMLA, and further discouraged him from taking his pre-approved FMLA leave."

**ANSWER:**    Jernberg denies the allegations in Paragraph 18 of the Complaint.

"19.    Plaintiff attempted in good faith to comply with Defendant's doctors' note requirement for the first few months of his intermittent FMLA leave, and obtained notes from his surgeon confirming Plaintiff's condition and excusing him from work for each absence."

**ANSWER:**    Jernberg admits that Plaintiff provided to Jernberg notes from his surgeon confirming Plaintiff's condition and excusing him from work for his intermittent absences from September 2005 to February 10, 2006.  Jernberg denies the remaining allegations in Paragraph 19 of the Complaint.

"20.    However, on December 9, 2005, Plaintiff informed Defendant's Human Resources Administrator Kris Franze that his surgeon: a) had become frustrated by having to continually provide doctors' notes for each intermittent day of FMLA leave, and b) informed him that because he had already certified Plaintiff's condition and the need for intermittent absences for a one-year period through August 29, 2006, he would not continue providing doctors' notes for each individual occurrence of intermittent FMLA leave."

**ANSWER:**    Jernberg denies the allegations in Paragraph 20 of the Complaint.

"21.    After December, 2005, Plaintiff continued to take intermittent FMLA leave, and to diligently inform the Company each time that he would be out on leave.  However, Franze

continued to insist that Plaintiff provide a separate doctors' note for each absence in order for the absence to qualify as intermittent leave under the FMLA.  Franze threatened Plaintiff with termination if he failed to comply with the Company's doctors' note requirement."

**ANSWER:** Jernberg admits that Plaintiff continued to take intermittent FMLA leave after December 2005 and that he called to inform the Company of each absence.  Jernberg denies the remaining allegations in Paragraph 21 of the Complaint.

"22.   Because of the Company's insistence that Plaintiff document each occurrence of intermittent FMLA leave with a separate doctor's note, notwithstanding the approved certification, the Plaintiff's wife contacted the United States Department of Labor ("USDOL"), and asked a USDOL representative whether the Company's policy of requiring a doctors' note for each instance of intermittent FMLA leave was legal.  The USDOL told Plaintiff's wife that the Company's doctors' note policy violated the FMLA, and that Plaintiff should not have to provide a doctors' note for each intermittent FMLA absence so long as he had provided the Company with a certification showing the need for intermittent leave."

**ANSWER:**   Jernberg denies that it insisted that Plaintiff document each occurrence of intermittent FMLA leave with a separate doctor's note.  Jernberg is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 of the Complaint, and accordingly, denies those allegations.

"23.   On or about April 12, 2006, in a telephone call between Franze and the Plaintiff, Franze again insisted that Plaintiff provide doctors' notes for specific daily intermittent FMLA absences, and Plaintiff again reiterated that he could not.  During that telephone conference, Franze heard a woman, Plaintiff's wife, say in the background:  'I called the federal government and they said you do not need to provide paperwork.' "

**ANSWER:**   Jernberg admits that during a telephone call on or about April 12, 2006 between Franze and Plaintiff, Franze heard a woman say in the background: "I called the federal government and they said you do not need to provide paperwork."  Jernberg is without knowledge or information sufficient to form a belief as to the truth of the allegation that the woman in the background was Plaintiff's wife and, accordingly, denies that allegation.  Jernberg also denies the remaining allegations in Paragraph 23 of the Complaint.

"24.   Defendant had no reason to doubt that the days Plaintiff took intermittent FMLA leave were bona fide, necessary, and that they resulted from the medical conditions identified on his previously-approved FMLA certification."

**ANSWER:**   Jernberg denies the allegations in Paragraph 24 of the Complaint.

"25.   For each day that he took intermittent FMLA leave, although he was not able to obtain separate doctors' notes for each such day, Plaintiff called the Company as soon as he was aware of his need to take the intermittent FMLA leave, and kept the Company regularly informed about his progress and anticipated return to work."

**ANSWER:**   Jernberg admits that for each day that Plaintiff took intermittent FMLA leave, Plaintiff called Jernberg and kept Jernberg regularly informed about his progress and anticipated return to work.  Jernberg denies the remaining allegations in Paragraph 25 of the Complaint.

"26.   On June 29, 2006, Defendant terminated Plaintiff pursuant to the Company's attendance policies, specifically, for having failed to provide separate doctors' notes for each day that Plaintiff was absent on pre-certified, approved, intermittent FMLA leave."

**ANSWER:**   Jernberg admits that on June 29, 2006, it terminated Plaintiff pursuant to Jernberg's attendance policies.  Jernberg denies the remaining allegations in Paragraph 26 of the Complaint.

"27.   At the time of his termination, Plaintiff had not exhausted the days available to him for intermittent leave under the FMLA and had in all respects, other than providing doctors' notes for each intermittent FMLA absence, complied with Defendants' attendance policies."

**ANSWER:**   Jernberg denies the allegations in Paragraph 27 of the Complaint. Jernberg states affirmatively that Plaintiff received more than the 12 weeks of leave to which he was entitled under the FMLA.

**COUNT I**
**INTERFERENCE WITH FMLA RIGHTS**

"28.   Plaintiff incorporates paragraphs 1-27 as though fully re-stated and set forth herein."

**ANSWER:** Jernberg incorporates its Answers to Paragraphs 1-27 as its answer to Paragraph 28 of the Complaint.

"29. By August 29, 2005, Plaintiff had been employed by the Defendant for approximately three (3) years, and had worked at least 1,250 hours during the twelve months immediately preceding the date his intermittent FMLA leave began."

**ANSWER:** Jernberg admits the allegations in Paragraph 29 of the Complaint.

"30. Plaintiff was required to be intermittently absent from work due to care for an ongoing serious medical condition."

**ANSWER:** Jernberg admits the allegations in Paragraph 30 of the Complaint.

"31. Plaintiff's medical diagnosis constituted a "serious health condition" for purposes of the FMLA."

**ANSWER:** Jernberg admits the allegations in Paragraph 31 of the Complaint.

"32. Plaintiff was entitled to intermittent leave in order to care for his health condition, under the FMLA."

**ANSWER:** Jernberg admits the allegations in Paragraph 32 of the Complaint.

"33. Plaintiff's physician certified Plaintiff's medical condition and provided written certification to Defendant."

**ANSWER:** Jernberg admits the allegations in Paragraph 33 of the Complaint.

"34. Defendant Company approved Plaintiff for intermittent FMLA leave to be taken pursuant to his physician's certification any time between August 29, 2005 and August 29, 2006."

**ANSWER:** Jernberg admits the allegations in Paragraph 34 of the Complaint.

"35. Under the FMLA, an employer may request recertification no more than every thirty (30) days."

**ANSWER:** Jernberg admits the allegations in Paragraph 35 of the Complaint.

"36. Defendant required Plaintiff to provide doctor's notes certifying his medical condition for each absence taken pursuant to Plaintiff's intermittent FMLA leave."

**ANSWER:** Jernberg denies the allegations in Paragraph 36 of the Complaint.

"37.    Defendant requested certification of Plaintiff's medical condition more frequently than once every thirty (30) days, and also failed to provide Plaintiff with any supplemental certification forms for such occasions that he would need intermittent FMLA leave."

**ANSWER:**    Jernberg denies the allegations in Paragraph 37 of the Complaint.

"38.    Defendant penalized Plaintiff for his inability to provide doctor's notes for absences that clearly resulted from the FMLA certification that had previously been approved and that was on file with the Company."

**ANSWER:**    Jernberg denies the allegations in Paragraph 38 of the Complaint.

"39.    Defendant has interfered with Plaintiff's exercise of his FMLA rights by terminating Plaintiff's employment for being absent from work pursuant to his pre-approved intermittent FMLA leave, as described above."

**ANSWER:**    Jernberg denies the allegations in Paragraph 39 of the Complaint.

"40.    As a direct and proximate result of said act, Plaintiff has suffered and continues to suffer loss of income, loss of other employee benefits, and has suffered and continues to suffer from lack of employment, costs, fees, expenses, and damage to his reputation."

**ANSWER:**    Jernberg denies the allegations in Paragraph 40 of the Complaint.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

1.    Plaintiff's claims are barred on the grounds that Plaintiff received more than the 12 weeks of leave to which he was entitled under the FMLA.

2.    Plaintiff's claims for lost wages are barred to the extent that he failed to mitigate his damages.

3.    Any claim for liquidated damages is barred because Jernberg engaged in good faith efforts to comply with federal law and it had and continues to have reasonable grounds to believe

that its actions are not violations of the FMLA.

Dated: July 23, 2008                                    Respectfully submitted,

                                                        Jernberg Industries, Inc.

                                                        By:   s/ Carla J. Rozycki
                                                                One of its Attorneys

Carla J. Rozycki (2409526)
Emma J. Sullivan (6269456)
Grace S. Ho (6293010)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484